## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

STEPHANIE MELLON-REPPEN,

      Plaintiff,

        v.

MCLAREN HEALTH CARE CORPORATION,
a Michigan non-profit corporation; and
HEALTH ADVANTAGE, INC. d/b/a
MCLAREN HEALTH ADVANTAGE, a
Michigan Corporation

      Defendants.

Case No. _____

Wayne County
  Civil Action No. 17-008736-NO

### NOTICE OF REMOVAL

Pursuant to 28 U.S.C. §§1441 and 1446, McLaren Health Care Corporation and Health Advantage, Inc. ("Defendants") hereby file this Notice of Removal of this case from the Circuit Court for the County of Wayne, State of Michigan, Case No. 17-008736-NO, where it is currently pending, to the United States District Court for the Eastern District of Michigan, Southern Division.  This case is removable to this Honorable Court because it asserts federal claims against the Defendants over which this Court has original subject matter jurisdiction.

In support of such removal, Defendants respectfully state as follows:

1.      Plaintiff instituted this civil action in the Circuit Court for the County of Wayne, State of Michigan, on or about June 13, 2017.

2.      Plaintiff served the Civil Summons and Complaint by certified mail on June 19, 2017.  A true and correct copy of all process, pleadings and orders as served upon Defendants is attached hereto as "Exhibit A" and incorporated herein by reference.

3.      Pursuant to 28 U.S.C. § 1446(b), this Notice of Removal is filed within thirty (30) days after service of the initial pleading on which the aforesaid action is based.

4.      The United States District Court for the Eastern District of Michigan, Southern Division is the federal judicial district encompassing the Circuit Court for the County of Wayne, State of Michigan, where this suit was originally filed.  Venue is therefore proper under 28 U.S.C. §§ 102(a) and 1441(a).

## FEDERAL QUESTION JURISDICTION

5.      By way of this lawsuit, Plaintiff seeks to recover, *inter alia*, a declaratory judgment that Defendants must provide her with health care coverage pursuant to ERISA § 502 (a)(1)(B), reimbursement for medical care costs that Plaintiff has allegedly incurred in an amount exceeding $75,000, and reasonable attorneys' fees and costs pursuant to ERISA § 502(g)(1).  Plaintiff alleges: she is employed at the Karmanos Cancer Center; that she is entitled to certain employee benefits, including health care coverage; that she is eligible for health care coverage under an ERISA Plan sponsored by McLaren Health Care Corporation; that she has been diagnosed with relapsing remitting multiple sclerosis; that she was entitled to coverage for an experimental treatment; and that the Plan denied coverage for the treatment.

6.      The health care benefits referred to in Plaintiff's Complaint are provided pursuant to an ERISA-governed employee welfare benefit plan, as defined in 29 U.S.C. § 1002(1).  The Plan provides for ERISA covered welfare benefits, specifically health care benefits.   The Plan provides self-funded medical benefits to eligible employees of McLaren subsidiaries, including employees of Karmanos Cancer Center, as defined in the Plan.   The Plan contracts with McLaren Health Advantage, a Michigan third-party

administrator, to provide certain administrative services in support of the Plan.  By its own terms, the Plan is intended to be an ERISA governed welfare benefit plan. Accordingly, this action is one over which this Court has original jurisdiction pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 1132(e) in that Plaintiff's claims are related to and connected with an ERISA-governed benefit plan for which Prudential insures certain benefits.  Plaintiff's claims, in whole or in part, come within the scope of ERISA § 502(a), 29 U.S.C. § 1132(a).

6.     In addition to the foregoing, Plaintiff's Complaint actually pleads claims under ERISA.  Count IV, entitled "Claim to Recover Full benefits – ERISA § 502(a)(1)(B)" alleges that the Plan is covered by ERISA, that Defendants breached the Plan by denying Plaintiff's claim for coverage of the experimental treatment and that Plaintiff has sustained damages and lost wages.  Similarly, Plaintiff asserts, at Count V, a claim for Breach of Fiduciary Duty under ERISA § 502(a)(3).  She claims that Defendants violated their fiduciary duties towards Plaintiff by denying her coverage.

7.     The United States Supreme Court has recognized that the comprehensive remedial scheme established by ERISA, 29 U.S.C. § 1001, *et seq.*, is one area where Congress intended to "occupy the field" thus providing for complete or super preemption of state law claims irrespective of the absence of an explicit federal claim pled on the face of the Complaint.  *See Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 48 (1987), *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 64-67 (1987).  Pursuant to 29 U.S.C. §§ 1132(e)(1) and (f) and 28 U.S.C. § 1331 the District Courts of the United States have original and/or exclusive jurisdiction over such claims without respect to the amount in controversy or the citizenship of the parties.  Thus, this civil action is one over which this

Court has original and/or exclusive jurisdiction and it is one that may be removed to this Court by Defendants.

## **MISCELLANEOUS**

8.      A copy of this notice of Removal is being filed with the Circuit Court for the County of Wayne, State of Michigan, as provided by law, and written notice is being sent to Plaintiff's counsel.

9.      The prerequisites for removal under 28 U.S.C. § 1441 have been satisfied.

10.     The facts upon which this Notice is based are true and correct and this case is removable to the United States District Court for the Eastern District of Michigan, Southern Division.

**WHEREFORE**, Defendants, by and through their Counsel, and through the filing of this Notice of Removal, the giving of written notice thereof to Plaintiff, and the filing of a copy of this Notice of Removal with the clerk of the Circuit Court for the County of Wayne, State of Michigan, effects the removal of said civil action to this Honorable Court.

This 17th day of July, 2017.

Respectfully submitted,

*s/Richard W. Warren*
MILLER, CANFIELD, PADDOCK & STONE, P.L.C.
150 West Jefferson, Suite 2500
Detroit, Michigan 48226
(313) 496-7932
warren@millercanfield.com
P63123
*Attorney for Defendants*

- 4 -

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 17, 2017, I electronically filed the forgoing paper with the Clerk of the Court using the ECF system, and I hereby certify that I have mailed by United States Postal Service the paper to the following:

> *James T. Mellon*
> *Mellon Pries, P.C.*
> *2150 Butterfield Drive, Siute 100*
> *Troy, MI 48084-3427*

Respectfully submitted,

> *s/Richard W. Warren*
> MILLER, CANFIELD, PADDOCK & STONE, P.L.C.
> 150 West Jefferson, Suite 2500
> Detroit, Michigan 48226
> (313) 496-7932
> warren@millercanfield.com
> P63123
> *Attorney for Defendants*

| STATE OF MICHIGAN THIRD JUDICIAL CIRCUIT WAYNE COUNTY | SUMMONS AND COMPLAINT | CASE NO. 17-008736-NO Hon. Susan L. Hubbard |
|---|---|---|

2 Woodward Ave., Detroit MI 48226      Court Telephone No. 313-224-5183

| **Plaintiff** Mellon-Reppen, Stephanie | v | **Defendant** Health Advantage, Inc. d/b/a McLaren Health Advantage |
|---|---|---|
| **Plaintiff's Attorney** James T. Mellon, P-23876 2150 Butterfield Dr Ste 100 Troy, MI 48084-3427 | | ~~Defendant's Attorney~~ XXXXXXXXXXXX c/o Kathy Kendall Resident Agent G3245 Beecher Rd. Flint, MI 48532 |

**SUMMONS** **NOTICE TO THE DEFENDANT:** In the name of the people of the State of Michigan you are notified:

1. You are being sued.
2. **YOU HAVE 21 DAYS** after receiving this summons to **file a written answer with the court** and serve a copy on the other party **or take other lawful action with the court** (28 days if you were served by mail or you were served outside this state). (MCR 2.111[C])
3. If you do not answer or take other action within the time allowed, judgment may be entered against you for the relief demanded in the complaint.

| Issued 6/13/2017 | This summons expires 9/12/2017 | Court clerk File & Serve Tyler |
|---|---|---|

\*This summons is invalid unless served on or before its expiration date. This document must be sealed by the seal of the court.

**COMPLAINT** *Instruction: The following is information that is required to be in the caption of every complaint and is to be completed by the plaintiff. Actual allegations and the claim for relief must be stated on additional complaint pages and attached to this form.*

☐ This is a business case in which all or part of the action includes a business or commercial dispute under MCL 600.8035.

**Family Division Cases**

☐ There is no other pending or resolved action within the jurisdiction of the family division of the circuit court involving the family or family members of the parties.

☐ An action within the jurisdiction of the family division of the circuit court involving the family or family members of the parties has been previously filed in _____ Court.

The action ☐ remains ☐ is no longer pending. The docket number and the judge assigned to the action are:

| Docket no. | Judge | Bar no. |
|---|---|---|

**General Civil Cases**

☑ There is no other pending or resolved civil action arise out of the same transaction or occurrence as alleged in the complaint.

☐ An civil action between these parties or other parties arising out of the transaction or occurrence alleged in the complaint has been previously filed in _____ Court.

The action ☐ remains ☐ is no longer pending. The docket number and the judge assigned to the action are:

| Docket no. | Judge | Bar no. |
|---|---|---|

**VENUE**

| Plaintiff(s) residence (include city, township, or village) Livonia, MI | Defendant(s) residence (include city, township, or village) Flint, MI (registered office) |
|---|---|
| Place where action arose or business conducted Wayne County, MI | |

6/14/2017
Date     Signature of attorney/plaintiff    James T. Mellon (P23876)

If you require special accommodations to use the court because of a disability or if you require a foreign language interpreter to help you fully participate in court proceedings, please contact the court immediately to make arrangements.

MC 01 (5/15) SUMMONS AND COMPLAINT MCR 2.102(B)(11), MCR 2.104, MCR 2.105, MCR 2.107, MCR 2.113(C)(2)(a),(b), MCR 3.206(A)

JP

STATE OF MICHIGAN

IN THE CIRCUIT COURT FOR THE COUNTY OF WAYNE

STEPHANIE MELLON-REPPEN, an
individual,

          Plaintiff,

vs.

MCLAREN HEALTH CARE CORPORATION,
a Michigan non-profit corporation; and
HEALTH ADVANTAGE, INC d/b/a MCLAREN
HEALTH ADVANTAGE, a Michigan corporation

          Defendants.

Case No: 17-_____-NO

Hon. $\underline{\text{SUSAN L. Hubbard}}$

17-008736-NO
FILED IN MY OFFICE
WAYNE COUNTY CLERK
6/13/2017 1:35:44 PM
CATHY M. GARRETT

JAMES T. MELLON (P23876)
DAVID A. KOWALSKI (P71179)
Mellon Pries, P.C.
Attorney for Plaintiff
2150 Butterfield Dr., Ste. 100
Troy, MI 48084-3427
248-649-1330 (fax 248-649-1622)
jmellon@mellonpries.com

There is no other pending or resolved civil action arising out of
the transaction or occurrence alleged in this Complaint.

## **COMPLAINT AND JURY DEMAND**

NOW COMES Plaintiff, STEPHANIE MELLON-REPPEN ("Ms. Mellon-Reppen"),

by and through her attorneys, Mellon Pries, P.C., and for her Complaint, states:

1.    Ms. Mellon-Reppen is an individual residing within the City of Livonia,

County of Wayne, State of Michigan.

2.    Defendant MCLAREN HEALTH CARE CORPORATION ("MHCC") is a

Michigan non-profit corporation which conducts business in County of Wayne, State of

Michigan.

MELLON PRIES
2150 BUTTERFIELD
SUITE 100
TROY, MI 48084
(248) 649-1330

3.     Defendant HEALTH ADVANTAGE, INC d/b/a MCLAREN HEALTH ADVANTAGE ("Health Advantage"), is a Michigan for-profit corporation which conducts business in County of Wayne, State of Michigan.

4.     MHCC and Health Advantage shall be referred to collectively as "McLaren".

5.     Ms. Mellon-Reppen works at the Karmanos Cancer Center, an entity affiliated with McLaren, in City of Detroit, County of Wayne, State of Michigan.

6.     The events giving rise to this dispute arose out of Ms. Mellon-Reppen's employment, and ancillary agreements, at the Karmanos Cancer Center, County of Wayne, State of Michigan.

7.     As to any declaratory count, it is brought because an actual controversy exists between the parties as to the coverages available to Ms. Mellon-Reppen as detailed herein, pursuant to MCR 2.605.

8.     The amount in controversy exceeds $25,000.

9.     Jurisdiction is proper in this Court.

10.    Venue is proper in this Court, pursuant to MCL 600.1621 and/or MCL 600.1629.

## GENERAL ALLEGATIONS

11.    Mellon-Reppen incorporates the above paragraphs, by reference, as though fully set forth herein.

12.    As an employee at the Barabara Ann Karmanos Center Institute, Ms. Mellon-Reppen is entitled to certain employee benefits, including, but not limited to health care coverage.

13.    A copy of the MHCC Plan Document/Summary Plan Description ("McLaren

MELLON PRIES
2150 BUTTERFIELD
SUITE 100
TROY, MI 48084
(248) 649-1330

2

Plan") for the health care benefits to which Ms. Mellon-Reppen is entitled is attached as **Exhibit A**.

14.     The McLaren Plan provides that MHCC is the Plan Sponsor/Employer. (**Exhibit A**, p. 18).

15.     The McLaren Plan provides that the Plan Administrator and Named Fiduciary is MHCC.  (**Exhibit A**, p. 19).

16.     The McLaren Plan provides that the Claims Administrator and Pre- and Post-Service Claim Appeals Named Fiduciary is Health Advantage.  (**Exhibit A**, p. 19).

17.     Ms. Mellon-Reppen was diagnosed with severe relapsing remitting multiple sclerosis ("RRMS" or "MS") in 1997.

18.     Ms. Mellon-Reppen initially treated her MS with a number of medications, including Avonex, Copaxone, Betaseron, Rebif, Tysabri, and Gilenya.

19.     Unfortunately, all of the medications had to be discontinued for a variety of reasons, including, but not limited to: development of optic neuritis, risk of developing a deadly brain disease (PML), and ineffectiveness/resistance for the various medications attempted.

20.     MRI testing on Ms. Mellon-Reppen has indicated that despite pursuing other treatments, she continued to develop new brain lesions, and was experiencing brain fog, fatigue, numbness, difficulty walking, and signs of progressive aggressive dymelinating disease.

21.     Ms. Mellon-Reppen's physician, Richard K. Burt, M.D., Chief of the Division of Immunotherapy at Northwestern Medicine, determined that Ms. Mellon-Reppen was an optimal candidate to undergo high dose immune ablation with rituxan cyclophosphadmide

and ATG followed by autologous stem cell reinfusion ("HSCT"), a procedure which Dr. Burt described as "medically necessary." (**Exhibit B**, p. 1).

22.      Dr. Burt noted that although there was presently a study involving HSCT for patients with MS, Ms. Mellon-Reppen would not be a part of the study, and instead, Dr. Burt "will be *treating this patient as standard of care on a compassionate basis.*" (**Exhibit B**, p. 1) (emphasis in original).

23.      On 12/07/2016, Dr. Burt requested authorization from McLaren to perform the HSCT on Ms. Mellon-Reppen. (**Exhibit B**).

24.      In his request, Dr. Burt:

      a.      Noted the unavailability, or ineffectiveness, of medications to treat Ms. Mellon-Reppen's MS (**Exhibit B**, p. 1);

      b.      Concluded that the HSCT was more likely to benefit Ms. Mellon-Reppen more than any other available therapy, based on clinical literature and medical evidence (*Id.*);

      c.      Concluded "The only treatment that has been shown to significantly reverse neurological disability and put patient disease into remission is HSCT" (*Id.*);

      d.      Cited, and provided copies of, several peer reviewed medical publications to document the effectiveness of HSCT in MS patients (*Id.* at pp. 2-3);

      e.      Reiterated "there is no current conventional therapy for RRMS that results in significant reversal of the disability" (*Id.* at p. 2);

      f.      Stated that numerous other health plans, including Medicare, various Blue Cross Blue Shield entities, United Health Care, and Cigna have approved reimbursement of HSCT in MS patients (*Id.* at p. 3); and

      g.      Warned that "Time is of the essence, as this treatment will only be effective while the patient is in the inflammatory stage of the disease. This is a request to authorize the treatment to stop disease progression and preserve [the] patient's physical [and cognitive] function" (*Id.*).

25.     The benefits manager at the Karmanos Cancer Center, advised Ms. Mellon-Reppen that the HSCT procedure would be covered by the McLaren Plan.

26.     Dr. Burt provided a list of numerous insurance providers who have covered HSCT procedures, including many providers who have covered the procedure in the context of the treatment of MS.  (**Exhibit M**).

27.     On 12/14/2016, McLaren denied the request to cover the HSCT procedure for Ms. Mellon-Reppen for two limited reasons:

      a.     The McLaren Plan (**Exhibit A**, p. 42) only had 12 diagnoses which qualified for HSCT, and MS was not one of them; and

      b.     The McLaren Plan provided coverage for HSCT for diagnoses in addition to the 12 listed diagnoses "if the services are not otherwise excluded from coverage as experimental or investigational. According to the medical documentation received from Dr. R. Burt, the proposed treatment plan is a clinical trial.

(**Exhibit C**).

28.     McLaren ignored the language of the McLaren Plan and failed to properly read Dr. Burt's request, which clearly indicated that Ms. Mellon-Reppen's treatment would not be part of any study.

29.     The McLaren Plan provides, in relevant part, under "Covered Services":

**Section 7: COVERED SERVICES**

With the exception of Preventive Services, services are only covered when they are deemed to be "Medically Necessary."

[ * * * ]

**III.   Facility Services**

[ * * * ]

**I.     Transplants:**

1.)   Bone Marrow Transplants

[ * * * ]

c)   Autologous bone marrow and peripheral blood stem cell transplants are covered to treat:

1.   Acute lymphocytic leukemia
2.   Acute non-lymphocytic leukemia
3.   Germ cell tumors of ovary, testis, mediastinum, retroperitoneum
4.   Hodgkin's disease (stage JII or IV)
5.   Neuroblastoma (stage III or IV)
6.   Non-Hodgkin's lymphoma (intermediate or high grade)
7.   Metastatic breast cancer (stage IV)
8.   Multiple myeloma
9.   Primitive neuroectodermal tumors
10.  Ewing's sarcoma
11.  Medulloblastoma
12.  Wilms' Tumor

d)   Coverage is also provided for any services related to or for high-dose chemotherapy, total body radiation, allogeneic or autologous bone marrow and/or peripheral blood stem cell transplants to treat conditions other than those listed above if the services are not otherwise excluded from coverage as experimental or investigational.

(**Exhibit A,** pp. 24, 34, 41-42) (emphasis added).

30.    Thus, HSCT would be covered for treating MS, even though it is not listed as one of the 12 explicitly covered diagnoses, so long as the services "are not otherwise excluded from coverage as experimental or investigational." (**Exhibit A,** pp. 24, 34, 41-42).

31.    "Otherwise excluded" clearly means that services for bone marrow transplants for treatment of diagnoses not explicitly listed among the 15 covered diagnoses would be covered, unless excluded by some other exclusion for experimental

MELLON PRIES
2150 BUTTERFIELD
SUITE 100
TROY, MI 48084
(248) 649-1330

6

or investigational services.

32.   The exclusions specific to Bone Marrow Transplants in Section 7(III)(I)(1)

do not contain any exclusion for experimental or investigational procedures:

> g)   The following services are not covered:
>
>> 1.   Any services related to or for allogeneic bone marrow transplants and/or peripheral blood stem cell transplants when the donor does not meet the HLA genetic marker matching requirements.
>> 2.   Purging of and/or positive stem cell selection of:
>>> a.   Bone marrow stem cells
>>> b.   Peripheral blood stem cells
>> 3.   Harvesting and storage costs of bone marrow and/or peripheral blood stem cells if not intended for transplant within one year
>> 4.   Health care services provided by persons who are not legally qualified or licensed to provide such services
>> 5.   Services that are not medically necessary ("Medically Necessary" is defined in Section 7: COVERED   SERVICES;   I.   MEDICALLY NECESSARY)
>> 6.   Any facility, physician or associate serviced related to any of the above named exclusions[.]

(**Exhibit A**, p. 42).

33.   Furthermore, the McLaren Plan has no general exclusion for services as experimental or investigational, and therefore, HSCT as a treatment for MS is "not otherwise excluded from coverage as experimental or investigational."

34.   The McLaren Plan, does, however, exclude certain services as experimental or investigational, *i.e.* durable medical equipment and prescription drugs, thus evidencing that the McLaren Plan does not contain a general exclusion for experimental or investigational treatment, as if such a general exclusion existed, there would be no need to have specific exclusions for limited classes of treatment. (**Exhibit**

**A**, pp. 32, 48).

35.     McLaren failed to identify any portion of the McLaren Plan which contains either a general exclusion for services which are experimental or investigational, or an exclusion particularly for autologuous bone marrow and peripheral blood stem cell transplants, such as HSCT, which are experimental or investigational.

36.     Upon receipt of McLaren's wrongful denial of coverage to Ms. Mellon-Reppen relative to the HSCT procedure, Dr. Burt requested an expedited appeal on 12/27/2016.  (**Exhibit D**).

37.     Dr. Burt proceeded to explain, in detail, why the procedure was necessary:

> **This is an urgent request as there is short window of opportunity here to treat her disease during the active stage and prior to entering Into a permanent disability.**
>
> Stephanie Mellon-Reppen has severe relapsing remitting multiple sclerosis and has been medically approved to be treated with hematopoietic stem cell transplantation. A recent MRI shows lesions consistent with acute demyelination. She has failed many therapies as she is actively having relapses despite treatment wilh Avonex, Betaseron, Rebif, Tysabri; Gilenya and steroids.
>
> Since her diagnosis, she has suffered disease progression despite the use of standard therapy. Disease progression will result in further disability. She will remain on medications, as we are awaiting insurance approval to proceed with the stem cell transplant.
>
> This treatment is medically necessary because: (a) The hospital service is required for the treatment or management of a medical symptom or condition, (b) that is the most efficient service and (c) that it is the most economical service that can be safely provided.
>
> Regarding (a), Ms. Stephanie Mellon[-Reppen] requires medical care for the management of multiple sclerosis. In her case, the proposed treatment is required. She has failed standard therapy Including Avonex, Betaseron, Rebif, Tysabri,

> Gilenya and steroids. Ms. Mellon-Reppen was taken off: (1) Avonex because she had an acute attack that impaired her vision, (2) Betaseron because of 2 flares, (3) Rebif because of multiple attacks while on the drug, (4) Tysabri due to increases in her JC antibodies. Being JC virus positive while taking Tysabri put her at risk for the deadly brain disease, PML. She is currently taking Gilenya but is failing this drug because her most recent MRI demonstrates new multiple enhancing lesions. Therefore, hematopoietic stem cell transplantation is the best treatment for her condition.

(**Exhibit D**, p. 1) (emphasis in original).

38. Dr. Burt also cited, and attached, further medical literature regarding the efficacy of HSCT in treating MS, and concluded that HSCT was Ms. Mellon-Reppen's only treatment to offer hope of reversing the symptoms of MS which Ms. Mellon-Reppen was experiencing:

> Currently, her disease is in the inflammatory stage of MS (relapsing remitting) which offers hope of possibly reversing these debilitating symptoms. Her disease has demonstrated to be aggressive in nature and I feel that the only treatment that offers hope to reverse these symptoms and put her disease in remission is to treat her with our standard treatment of rituxan, high dose cyclophosphamide and ATG followed by autologous stem cell infusion.

(**Exhibit D**, p. 2) (emphasis in original).

39. McLaren apparently had Dr. Burt's request to authorize the HSCT procedure undergo "peer review" by Stephen Broomes, MD, an internal medicine physician who does not share Dr. Burt's board certification in hematology/oncology (*Compare* **Exhibit F** and **Exhibit G**), who concluded on 12/30/2017, that the treatment is experimental or investigational as it relates to MS, but cited no provision of the McLaren Plan containing an exclusion for experimental or investigational treatments or any support for his erroneous conclusion. (**Exhibit E**).

40.     Also on 12/30/2017, the very same day as Dr. Broomes "peer review" of Dr. Burt, despite the lack of shared board certification with Dr. Burt, four members of McLaren's "Appeals Committee" met, none of whom is identified as a physician. (**Exhibit H**).

41.     The "Appeals Committee" having received Dr. Broomes "peer review" the same day, on 12/30/2016, denied the request to approve HSCT for Ms. Mellon-Reppen, now claiming, for the first time, that HSCT was not approved to treat MS "because its effectiveness has not been established," which was not timely, false, and was not relied upon by Dr. Broomes. (**Exhibit H**).

42.     No effort was made to address or attempt to refute the medical literature submitted by Dr. Burt. (**Exhibit H**).

43.     Instead, the McLaren "Appeals Committee" relied on a document by Apollo Managed Care in the service category of "Hematology and Medical Oncology" (**Exhibit H, Exhibit I**); recall, the "peer review" physician, Dr. Broomes did not even have certification in hematology/oncology, though the requesting physician, Dr. Burt, was so certified. (*Compare* **Exhibit F** and **Exhibit G**).

44.     The Apollo Managed Care document cited to such unauthoritative references as "Wikipedia". (**Exhibit I**, p. 1).

45.     The McLaren Plan dictates what happens in the event of a denial:

> The notice of pre-service denial shall include an Explanation of Benefits, which will explain a denial, including:
>
> [ * * * ]
>
> 7.     If denial was based on medical necessity, experimental or investigational treatment or similar limit, the Plan will supply either:

    a. An explanation of the scientific or clinical judgment, applying the terms of the Plan to the Covered Person's medical circumstances, or

    b. A statement that such explanation will be supplied free of charge, upon request.

(**Exhibit A**, p. 60).

  46. The denial fails to provide any explanation of the scientific or clinical judgment, but merely makes unsubstantiated, and incorrect, conclusory statements. (**Exhibit C**).

  47. The denial also fails to identify, yet alone apply, the terms of any exclusion for experimental or investigational treatment in the McLaren Plan. (**Exhibit C**).

  48. Dr. Burt wrote a further request on 02/02/2017, again attaching peer reviewed medical literature, documenting the effectiveness of the treatment, and explaining that no current conventional therapy for RRMS would result in significant reversal of Ms. Mellon-Reppen's disability. (**Exhibit J**)

  49. The entirety of the appeal process states:

    A Covered Person (or authorized representative) may request a review of a denied claim by making a written request to the named fiduciary within one hundred eighty (180) calendar days from receipt of notification of the denial and stating the reasons the Covered Person feels the claim should not have been denied. If the Covered Person (or authorized representative) wishes to appeal the denial when the services in question have already been rendered, such an appeal will be considered as a separate post-service claim. (See the provision above entitled, *Post-Service Claims Procedure*)[.]

(**Exhibit A**, p. 60).

  50. Other than a written request for an appeal, no further steps for an appeal are required by the McLaren Plan; furthermore, after filing a written request for an appeal,

no further appeal process is provided in the McLaren Plan. (**Exhibit A**, pp. 60-61).

51.    By way of Dr. Burt's 12/27/2016 written request for an expedited appeal, Ms. Mellon-Reppen has exhausted all appeal procedures outlined in the McLaren Plan.

52.    The denial by the "Appeals Committee" contains provision for an external review, but does not mandate that review as part of the appeals process (**Exhibit H**); The McLaren Plan, itself, contains no provision permitting, or requiring, an external review following a pre-service approval denial. (**Exhibit A**, pp. 60-61).

53.    A "Policy & Procedure Manual," of which the McLaren Plan contains no reference, provides for an external review, but does not state that an aggrieved member must request such a review as part of exhausting appeals. (**Exhibit K**).

54.    An attorney for Ms. Mellon-Reppen contacted McLaren to inquire into its denial of coverage, and was directed to an attorney for McLaren.

55.    The McLaren attorney was repeatedly asked to identify the particular exclusion for experimental or investigational treatment to which Section 7(III)(I)(1)(d) of the McLaren Plan referred as "otherwise" excluding the claim, but he could never identify any general or specific exclusion for services as experimental or investigational.

56.    Following the denial of the "Appeals Committee", Ms. Mellon-Reppen decided to proceed with the HSCT treatment for her MS, as she had no other treatment option which offered relief from the debilitating symptoms of MS.

57.    Ms. Mellon-Reppen and her family proceeded to incur large amounts of debt, including credit card debt, to pay for the necessary HSCT treatment, which was wrongfully denied by McLaren.

58.    Time was of the essence, as the HSCT treatment could only be utilized

while Ms. Mellon-Reppen's MS was in its inflammatory stage.

59.     Ms. Mellon-Reppen was subjected to the continued effects of the inflammatory stages of MS for a longer than necessary time due to McLaren's wrongful denial of the HSCT treatment.

60.     Ms. Mellon-Reppen experienced delay in treatment, stress, cognitive effects, emotional distress, physical distress, mental anguish, anxiety, mortification, pain and suffering, outrage, indignation, denial of social pleasure and enjoyment, and other physical and emotional injuries due to McLaren's wrongful denial of her claim, as her disease was left untreated as she attempted to gather the resources necessary to undergo the necessary procedure without the benefit of the health coverage provided by the McLaren Plan.

61.     As a result of the non-treated MS, Ms. Mellon-Reppen experienced bilateral feet/leg numbness, hand numbness, MS hug, difficulty hearing (with total hearing loss in one ear), vision changes, dizziness, brain fog, forgetfulness, short-term memory issues, fatigue, severe headaches, need for intermittent use of mobility devices when on uneven surfaces, inability to walk long distances, urinary hesitancy and retention, incontinence of urine and stool, and retention.

62.     Due to the progression of the MS and its resistance to conventional therapies, she was unable to work for an extended period of time, leading to a loss of income.

63.     The progression of the MS left Ms. Mellon-Reppen with such cognitive defects that she was unable to continue to perform her job, participate in the daily activities of life, or even observe/participate in her children's school and extracurricular

activities.

64.     In fact, the appearance of MS-related cognitive defects alters the classification of the disease, such that the risks for permanent impairment are significantly increased.

65.     Ms. Mellon-Reppen also was forced to undergo aggressive steroid treatment while awaiting the HSCT procedure to temper the symptoms, and developed a tolerance to normal dosages, resulting in complications and side effects due to the duration and dosage of the steroids required.

66.     The McLaren Plan in question may be a plan falling under the Employee Retirement Income Security Act of 1974, 29 USC 1001 *et seq*. ("ERISA").

67.     On numerous occasions, Ms. Mellon-Reppen, through her attorney, requested McLaren provide the particular provisions of the McLaren Plan which excluded the treatment as experimental or investigational, but McLaren could not, or would not, provide any such information.

68.     The denial by McLaren is arbitrary, capricious, unreasonable, and without a substantive basis.

69.     McLaren's denial is further irrational, as the HSCT procedure requested will not only be a more effective treatment, but in its ability to improve Ms. Mellon-Reppen's condition, will actually result in a cost savings, in limiting, delaying, or preventing further treatment due to the progression of Ms. Mellon-Reppen's MS.

70.     At present, Ms. Mellon-Reppen has been charged

   a.     $14,946.20 for services on 02/07/2017 – 02/08/2017, of which $10,638.23 was paid for by McLaren and $4,307.97 was paid by Ms. Mellon-Reppen;

    b.    $11,587.95 for services on 02/17/2017, of which the entire amount was paid by McLaren; and

    c.    $153,960.20 for services on 04/05/2017 – 04/20/2017, of which Ms. Mellon-Reppen has paid $122,415.22, leaving a balance of $31,544.98, with $0.00 paid for by McLaren. (**Exhibit L**).

71.    McLaren's payment of partial amounts demonstrates that even its denial is not consistent.

## COUNT I: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

72.    Ms. Mellon-Reppen incorporates the above paragraphs, by reference, as though fully set forth herein.

73.    McLaren's wrongful denial of Ms. Mellon-Reppen's claim of the only procedure which could reverse her disability brought on by MS, after the failure of all conventional prescription-drug--based treatments, on a non-existent exclusion for experimental or investigational treatment as it relates to bone marrow transplants is extreme and outrageous conduct.

74.    McLaren's conduct was intentional and/or reckless.

75.    As a direct and proximate result of McLaren's conduct, Ms. Mellon-Reppen sustained damages, including, but not limited to, loss of wages, stress, emotional distress, depression, physical distress, mental anguish, anxiety, mortification, pain and suffering, outrage, indignation, denial of social pleasure and enjoyment, and other damages made known during the course of this litigation.

## COUNT II: BAD FAITH

76.    Ms. Mellon-Reppen incorporates the above paragraphs, by reference, as though fully set forth herein.

77.    Michigan recognizes "that the covenant of good faith and fair dealing is an

implied promise contained in every contract 'that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract.'" *Hammond v United of Oakland, Inc*, 193 Mich App 146, 152; 483 NW2d 652 (1992) (quoting *Fortune v Nat'l Cash Register Co*, 373 Mass 96, 104; 364 NE2d 1251 (1977)).

78.     In the context of insurance, Michigan Courts hold, "the insurer owes the insured a duty of good faith. Thus, the insured has a direct cause of action against the insurer for a breach of this duty which exposes him to excess liability." *Comm'l Union Ins Co v Med Protective Co*, 136 Mich App 412, 416; 356 NW2d 648 (1984).

79.     McLaren was provided satisfactory evidence of covered event/condition under the McLaren Policy.

80.     McLaren has wrongfully refused to cover a medical procedure which the McLaren Policy does not exclude from coverage.

81.     McLaren engaged in bad faith:

    a.     By failing to adequately investigate the claim made;

    b.     By refusing to keep Ms. Mellon-Reppen informed of its decisions, including, but not limited to, the failure to disclose the particular exclusion on which McLaren was relying to wrongfully deny coverage;

    c.     By compelling its insured to become a party to further litigation, when McLaren's basis for denial is based on an incorrect reading of its own McLaren Policy;

    d.     By failing to consider the lack of alternative treatments available to Ms. Mellon-Reppen;

    e.     By ignoring and/or failing to address the requests by Ms. Mellon-Reppen's physician, providing peer-reviewed support for the procedure in question, affirmatively stating that Ms. Mellon-Reppen was being treated on a compassionate care (not clinical trial) basis,

and the lack of any other available treatments;

f.   By assigning the internal claims review to a physician who does not even share the relevant specialty of the procedure involved.

82.   As a direct and proximate result of McLaren's bad faith, Ms. Mellon-Reppen sustained damages, including but not limited to out-of-pocket expenses to obtain the HSCT procedure (together with financing charges), loss of wages, stress, emotional distress, physical distress, mental anguish, anxiety, mortification, pain and suffering, outrage, indignation, denial of social pleasure and enjoyment, and other damages made known during the course of this litigation.

## COUNT III: BREACH OF CONTRACT

83.   Ms. Mellon-Reppen incorporates the above paragraphs, by reference, as though fully set forth herein.

84.   Pursuant to the terms of the McLaren Plan, McLaren was obligated to provide coverage for medical procedures which are not excluded by the McLaren Plan.

85.   HSCT procedure relative to the treatment of MS is not excluded by the McLaren Plan.

86.   McLaren breached its contract with Ms. Mellon-Reppen in failing to cover the HSCT procedure relative to the treatment of MS.

87.   As a direct, proximate, and/or consequential result of McLaren's breach of contract, Ms. Mellon-Reppen has sustained damages, including but not limited to, out of pocket expenses in paying for the HSCT procedure, interest on financing necessary to pay for the HSCT procedure, and lost wages.

## COUNT IV: CLAIM TO RECOVER FULL BENEFITS – ERISA §502(a)(1)(B)

88.   Ms. Mellon-Reppen incorporates the above paragraphs, by reference, as

though fully set forth herein.

89.     The denial of Ms. Mellon-Reppen's claim for coverage for the HSCT treatment relative to her MS is in direct contravention of the McLaren Plan's provisions.

90.     McLaren breached the McLaren Plan documents by wrongfully denying the claim of Ms. Mellon-Reppen for coverage for HSCT treatment relative to her MS for reasons including, but not limited to:

> a.     Coverage is available for HSCT to treat MS "if the services are not otherwise excluded from coverage as experimental or investigational" and the McLaren Plan does not otherwise exclude the services as experimental or investigational (**Exhibit A**, pp. 24, 34, 41-42);

> b.     Coverage is available for HSCT as the treatment is medically necessary, as evidenced by Dr. Burt's correspondence, the authority cited therein, and all other authority which may be discovered during this litigation;

> c.     Coverage is available for HSCT to treat MS, as the treatment requested for Ms. Mellon-Reppen was not requested as part of any clinical trial, but rather, as stated by Dr. Burt, "*as standard of care on a compassionate basis*" (**Exhibit B**, p. 1);

> d.     All other breaches discovered during the course of this litigation.

91.     As a direct, proximate, and consequential result of McLaren's breach of the McLaren Plan, Ms. Mellon-Reppen has sustained damages, including, but not limited to, amounts spent out of pocket to obtain the HSCT procedure, as well as interest and other amounts incurred in having to obtain the financing necessary to pay the HSCT procedure, and lost wages.

## COUNT V: BREACH OF FIDUCIARY DUTY – ERISA §502(a)(3)

92.     Pursuant to ERISA § 404(a), 29 USC 1104(a), as fiduciary with respect to the Plan, Defendant Plan and Defendant Company had a duty to discharge their duties

MELLON PRIES
2150 BUTTERFIELD
SUITE 100
TROY, MI 48084
(248) 649-1330

18

with respect to the Plan solely in the interest of the Plan participants and their beneficiaries, and

   a.   for the exclusive purpose of providing benefits to Plan participants and their beneficiaries and defraying reasonable expense of administering the Plan;

   b.   with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matter would use in the conduct of an enterprise of a like character and with like aims; and,

   c.   in accordance with the Plan documents and instruments insofar as such documents and instruments are consistent with the provisions of Titles I and IV of ERISA.

93.   McLaren's actions in denying Ms. Mellon-Reppen coverage for the HSCT procedure to treat her MS is in violation of each and every one of the Defendants' fiduciary duties as set forth above.

94.   As a direct, proximate, and consequential result of McLaren's breach of the McLaren Plan, Ms. Mellon-Reppen has sustained damages, including, but not limited to, amounts spent out of pocket to obtain the HSCT procedure, as well as interest and other amounts incurred in having to obtain the financing necessary to pay the HSCT procedure, and lost wages.

WHEREFORE, for all these reasons, and for those which are made known during the course of this litigation, Ms. Mellon-Reppen requests this Honorable Court (i) enter a declaratory judgment pursuant to ERISA § 502(a)(1)(B), 29 USC 1132(a)(1)(B), and 28 USC 2201, declaring that Ms. Mellon-Reppen is entitled to coverage for the HSCT procedure to treat her MS, (ii) award Ms. Mellon-Reppen all amounts paid (including interest on financing) relative to the HSCT procedure, in an amount greater than $25,000; (iii) award reasonable attorney fees and costs pursuant to ERISA § 502(g)(1), 29 USC

1132(g)(1), or any other applicable statute or court rule; and (iv) award Ms. Mellon-Reppen damages, in excess of $25,000, together with costs, interest, and attorneys fees as may be available, for McLaren's infliction of emotional distress; (v) award Ms. Mellon-Reppen damages, together with costs, interest, and attorneys fees as may be available, for McLaren's bad faith; (vi) award Ms. Mellon-Reppen damages, in excess of $25,000 as a result of McLaren's breach of contract, together with costs, interest, and attorneys fees as may be available; and (vi) award in excess of grant Ms. Mellon-Reppen all other such relief as may be just, equitable, and appropriate.

MELLON PRIES, P.C.

BY:_/s/James T. Mellon (P23876)_____
  JAMES T. MELLON (P23876)
  DAVID A. KOWALSKI (P71179)
  Attorney for Defendant MMRMA
  2150 Butterfield Dr., Ste. 100
  Troy, MI 48084-3427
  (248) 649-1330
  jmellon@mellonpries.com

DATED: June 13, 2017

## JURY DEMAND

NOW COMES Plaintiff, STEPHANIE MELLON-REPPEN ("Ms. Mellon-Reppen"),

by and through her attorneys, Mellon Pries, P.C., and hereby demands a trial by jury as

to all issues so triable.

MELLON PRIES, P.C.


BY:  /s/James T. Mellon (P23876)
    JAMES T. MELLON (P23876)
    DAVID A. KOWALSKI (P71179)
    Attorney for Defendant MMRMA
    2150 Butterfield Dr., Ste. 100
    Troy, MI  48084-3427
    (248) 649-1330
    jmellon@mellonpries.com

DATED:  June 13, 2017